IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT ZUTOFT, on behalf of himself and all others similarly situated, | )<br>)<br>) |
| Plaintiff, | ) Case No. 20-cv-<br>)<br>) |
| vs. | )<br>) |
| NATIONWIDE CREDIT AND COLLECTION, INC., | )<br>)<br>) |
| Defendant. | ) Jury Demanded<br>) |

**INDIVIDUAL AND CLASS ACTION COMPLAINT**

Plaintiff, Robert Zutoft, brings this action under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA"), and alleges:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction pursuant to § 1692k(d) of the FDCPA, and 28 U.S.C. § 1331.

2. Venue is proper in this District because parts of the acts and transactions occurred here and Defendant transacts substantial business here.

**STANDING**

3. Defendant sent Plaintiff collection letters that, *inter alia*, failed to adequately disclose information required under the FDCPA, and disclosed information proscribed from being revealed under the FDCPA.

4. Plaintiff has a congressionally defined right to receive all communications from a debt collector free from any misrepresentations. *Genova v. IC Systems, Inc.*, No. CV 16-5621, 2017 WL 2289289, at *3 (D.N.J. May 25, 2017).

1

5. Plaintiff has suffered an injury as a result of Defendant's conduct, giving rise to standing before this Court. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1544 (2016), quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 580 (1992) (Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.); *Bellwood v. Dwivedi*, 895 F. 2d 1521, 1526-27 (7th Cir. 1990) ("Congress can create new substantive rights, such as a right to be free from misrepresentations, and if that right is invaded the holder of the right can sue without running afoul of Article III, even if he incurs no other injury[.]").

## PARTIES

6. Plaintiff, Robert Zutoft ("Plaintiff"), is a resident of the State of Illinois, from whom Defendant attempted to collect an alleged debt for non-elective medical services provided to him by John H. Stroger, Junior Hospital of Cook County ("Stroger"). Plaintiff is thus a "consumer" as that term is defined in 15 U.S.C. § 1692a(3) of the FDCPA.

7. Defendant Nationwide Credit and Collection, Inc. ("NCC" or "Defendant"), is an Illinois corporation. Its registered agent is Gregg Minkow, 123 North Wacker Drive, Suite 250, Chicago, Illinois, 60606.

8. NCC is engaged in the business of a collection agency, using the mails and telephone to collect defaulted consumer debts originally owed to others.

9. NCC holds a collection agency license from the State of Illinois.

10. NCC's primary business is the collection of defaulted debts from individuals who incurred charges for medical care rendered by hospitals, clinics, multi-specialty physician groups, and other medical providers.

11. Defendant NCC regularly collects or attempts to collect defaulted consumer debts due or asserted to be due another, and is a "debt collector" as defined in 15 U.S.C. § 1692a(6) of the FDCPA.

12. NCC maintains a website, https://www.ncc.us .

13. At the time of filing of this lawsuit, said website contained in part the following text:

## ABOUT US

Since 1969, Nationwide Credit & Collection, Inc. has been a leader in revenue collection providing unsurpassed results. Our commitment to performance, integrity, and service has resulted in significant increases and consistent results in Revenue Recovery and a Reduction of Aged Accounts.

We take pride in our longstanding reputation in healthcare and the relationships that are forged with major hospitals, medical centers, and specialty physician groups nationwide. For over 45 years, our commitment to patient relations, customer service, and client satisfaction has secured our position as a recognized industry leader.

https://www.ncc.us/about, Accessed on October 26, 2020.

### FACTUAL ALLEGATIONS

14. According to Defendant, Plaintiff incurred an alleged debt for medical services rendered to Plaintiff. ("alleged debt").

15. The alleged debt was incurred in connection with medical care provided to the Plaintiff that was not provided in connection with any business purpose.

16. The alleged debt was a "debt" as that term is defined at § 1692a(6) of the FDCPA.

17. Plaintiff did not owe the debt being collected, as the services were covered by his medical insurance.

18. The alleged debt was nonetheless declared to be in default.

19. NCC subsequently began collection activities on the alleged debt.

20. In May, 2020, NCC sent Plaintiff a collection letter ("First Letter") in an attempt to collect an alleged debt. (Exhibit A, First Letter).

21. The First Letter is dated May 7, 2020, and conveyed information regarding an alleged debt in the amount of $40.35, including an account number.

22. The First Letter was thus a "communication" as that term is defined at § 1692a(2) of the FDCPA.

23. Though dated May 7, 2020, the First Letter was not received until May 21, 2020.

24. Upon information and belief, the First Letter was not mailed until on or after May 14, 2020.

25. The First Letter lists "NCC" in the letterhead.

26. The First Letter lists the "Client Name" as "Cook County Health & Hospital Systems". (Exhibit A, First Letter).

27. The First Letter states:

> OUR CLIENT'S RECORDS INDICATE
> THE AMOUNT DUE IS NOW YOUR RESPONSIBILITY.
> WE OFFER SEVERAL PAYMENT OPTIONS

(Exhibit A, First Letter)

28. The First Letter directs that payment may be made to NCC.

29. The First Letter is signed by NCC.

30. However, NCC directs payments to be sent in care of "Evergreen Bank Group".

31. The First Letter does not identify which company among NCC, Cook County Health & Hospital Systems or Evergreen Bank Group is the creditor to whom the debt is owed.

4

32. The First Letter further states that upon writing within thirty (30) days of receiving this notice, "this office will provide you with the name and address of the original creditor, if different from the ***current creditor***." (emphasis added).

33. The First Letter thus communicates the possibility that the original creditor may not be the current creditor.

34. Yet nowhere does the First Letter identify a *current* creditor or indicate that the alleged debt is owed to a specific party—stating only a "client name" and a request to mail payment to yet another entity.

35. A simple statement that one of the companies was the "current creditor," or that the debt was owed to such party, would have sufficed to identify effectively the name of the creditor to whom the debt was then owed. *Dennis v. Niagara Credit Sols., Inc.*, 946 F.3d 368, 371 (7th Cir. 2019) (affirming summary judgment for a debt collector who properly identified itself as the "current creditor").

36. 15 U.S.C. § 1692g of the FDCPA provides as follows:

> **(a) Notice of debt; contents**
>
> **Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—**
>
> **. . . (2) the name of the creditor to whom the debt is owed. . . .**

37. NCC failed to effectively state the name of the current creditor to whom the debt is owed, in violation of 15 U.S.C. § 1692g(a)(2).

38. A debt collector risks violating the FDCPA when it chooses its own language that does not make clear the identity of the current creditor. *Steffek v. Client Servs.*, No. 19-1491, 2020 U.S. App. LEXIS 1759, at *12 (7th Cir. Jan. 21, 2020).

39. On May 29, 2020, Plaintiff sent a letter ("Dispute Letter") to NCC disputing the alleged debt and requesting that NCC cease communication with him.

40. NCC received the Dispute Letter on June 1, 2020.

41. 15 U.S.C. § 1692g of the FDCPA provides as follows:

**(b)Disputed debts**

**If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.**

42. Upon a timely written receipt of a dispute, a debt collector is thus required to cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. 15 U.S.C. § 1692g.

43. Despite having received the Dispute Letter, NCC did not cease collection of the alleged debt, and instead it repeatedly called Plaintiff thereafter.

44. On June 2, 2020, for example, NCC left a voice mail on Plaintiff's VOIP number, in connection with the collection of the alleged debt, stating that it was a debt collector and requesting a return call.

45. NCC's voice mail violated 15 U.S.C. § 1692g(b) of the FDCPA.

46. 15 U.S.C. § 1692c(c) of the FDCPA provides as follows:

**(c) CEASING COMMUNICATION**

**If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except—**

**(1) to advise the consumer that the debt collector's further efforts are being terminated;**

**(2) to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or**

**(3) where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy.**

47. NCC was required to cease communicating with Plaintiff after it became aware that Plaintiff notified it to cease collection, under the provisions of 15 U.S.C. §1692c(c).

48. Despite the FDCPA's proscription regarding continued contacts with Plaintiff after Defendant received the Dispute Letter, NCC continued to place calls to Plaintiff thereafter in its attempts to collect the alleged debt from him, for purposes other than those allowed under 15 U.S.C. § 1692c(c)(1)-(3).

49. NCC's voice mail violated 15 U.S.C. § 1692c(c) of the FDCPA.

50. Plaintiff was irritated and distressed at NCC's continued contacts after he directed NCC in writing to cease communication.

51. On July 1, 2020, Plaintiff placed a telephone call to NCC in response to the voicemail left by NCC on June 2, 2020, and was connected to an agent or employee who identified herself as "Gabby".

52. During the course of the conversation that ensued, Plaintiff asked Gabby why NCC had left a voicemail on June 2, 2020.

53. In response, Gabby told Plaintiff that the voicemail was left because Plaintiff owed over $90.00 to Cook County Hospital, and Gabby thereafter asked Plaintiff how he wanted to pay.

54. Plaintiff thereafter told Gabby that he had previously sent a letter requesting that communication cease.

55. NCC's statement that the voicemail pertained to a debt of over $90.00 confused Plaintiff, as the First Letter only sought $40.35.

56. In July, 2020, NCC sent Plaintiff another collection letter ("Second Letter") in an attempt to collect an alleged debt. (Exhibit B, Second Letter).

57. The Second Letter is dated June 25, 2020, and conveyed information regarding an alleged debt in the amount of $50.71, including an account number.

58. The Second Letter was thus a "communication" as that term is defined at § 1692a(2) of the FDCPA.

59. Though dated June 25, 2020, the Second Letter was not received until July 22, 2020.

60. Upon information and belief, the Second Letter was not mailed until on or after July 15, 2020.

61. The Second Letter lists "NCC" in the letterhead.

62. The Second Letter lists the "Client Name" as "Cook County Health & Hospital Systems".

63. The Second Letter states:

OUR CLIENT'S RECORDS INDICATE
THE AMOUNT DUE IS NOW YOUR RESPONSIBILITY.
WE OFFER SEVERAL PAYMENT OPTIONS

64. The Second Letter directs that payment may be made to NCC.

65. The Second Letter is signed by NCC.

66. However, NCC directs payments to be sent in care of "Evergreen Bank Group".

67. The Second Letter does not identify which company among NCC, Cook County Health & Hospital Systems or Evergreen Bank Group is the creditor to whom the debt is owed.

68. The Second Letter further states that upon writing within thirty (30) days of receiving this notice, "this office will provide you with the name and address of the original creditor, if different from the ***current creditor***." (emphasis added).

69. The Second Letter thus communicates the possibility that the original creditor may not be the current creditor.

70. Yet nowhere does the Second Letter identify a *current* creditor or indicate that the alleged debt is owed to a specific party—stating only a "client name" and a request to mail payment to yet another entity.

71. NCC failed to effectively state the name of the current creditor to whom the debt is owed, in violation of 15 U.S.C. § 1692g(a)(2).

72. Upon receipt of the Second Letter, Plaintiff realized that during his conversation with NCC on July 1, 2020, NCC's agent or employee, "Gabby", had included the alleged debt sought in the Second Letter when she requested payment of over $90.00 from Plaintiff.

73. As an agent or employee of NCC expressly informed Plaintiff, on July 1, 2020, that NCC had called Plaintiff on June 2, 2020 to discuss what NCC asserts was an over $90.00

9

debt, the June 2, 2020 communication was regarding both the debts in the First and Second Letter—which when added equal approximately the $90.00 figure.

74. NCC's initial communication with Plaintiff regarding the alleged debt sought in the Second Letter thus occurred on June 2, 2020.

75. Pursuant to 15 U.S.C. § 1692g(a) of the FDCPA, debt collectors must send a debt validation notice to the consumer within 5 days of the initial communication regarding a debt. *Vosatka v. Wolin-Levin, Inc.*, 1995 U.S. Dist. LEXIS 10415, at *4-5 (N.D. Ill. July 20, 1995).

76. NCC's initial communication regarding the alleged debt sought in the Second Letter was on June 2, 2020, yet the Notice of Debt relating to the alleged debt sought in the Second Letter was dated June 25, 2020.

77. By not mailing Plaintiff a validation notice until more than 5 days after the June 2, 2020 initial communication with Plaintiff regarding the alleged debt sought in the Second Letter, NCC violated 15 U.S.C. § 1692g(a).

78. In September, 2020, NCC sent Plaintiff another collection letter ("Third Letter") in an attempt to collect an alleged debt. (Exhibit C, Third Letter).

79. The Third Letter is dated September 11, 2020, and conveyed information regarding an alleged debt in the amount of $14.52, including an account number.

80. The Third Letter was thus a "communication" as that term is defined at § 1692a(2) of the FDCPA.

81. Though dated September 11, 2020, the Third Letter was not received until September 25, 2020.

82. Upon information and belief, the Third Letter was not mailed until on or after September 18, 2020.

83. The Third Letter lists "NCC" in the letterhead.

84. The Third Letter lists the "Client Name" as "Cook County Health & Hospital Systems".

85. The Third Letter states:

> OUR CLIENT'S RECORDS INDICATE
> THE AMOUNT DUE IS NOW YOUR RESPONSIBILITY.
> WE OFFER SEVERAL PAYMENT OPTIONS

86. The Third Letter directs that payment may be made to NCC.

87. The Third Letter is signed by NCC.

88. However, NCC directs payments to be sent in care of "Evergreen Bank Group".

89. The Third Letter does not identify which company among NCC, Cook County Health & Hospital Systems or Evergreen Bank Group is the creditor to whom the debt is owed.

90. The Third Letter further states that upon writing within thirty (30) days of receiving this notice, "this office will provide you with the name and address of the original creditor, if different from the ***current creditor***." (emphasis added).

91. The Third Letter thus communicates the possibility that the original creditor may not be the current creditor.

92. Yet nowhere does the Third Letter identify a *current* creditor or indicate that the alleged debt is owed to a specific party—stating only a "client name" and a request to mail payment to yet another entity.

93. NCC failed to effectively state the name of the current creditor to whom the debt is owed, in violation of 15 U.S.C. § 1692g(a)(2).

94. Plaintiff was confused by the First, Second and Third Letters, as he did not know the name of the entity to which he was alleged to owe money, due to the fact that the Letters did not clearly convey this information.

95. Plaintiff was also irritated and worried as a result of being unable to discern the identity of the current creditor, since a mistake made by Plaintiff as to whether the current creditor was the "Client", and thus whether to pay the "Client" or not, could have resulted in negative credit reporting if Plaintiff was wrong in his identification of the entity to which the alleged debt was owed; NCC's actions thus increased the risk of harm to Plaintiff's credit profile.

96. An unsophisticated consumer would be confused by the First, Second and Third Letters, as said consumer would not know the name of the entity to which the consumer was alleged to owe money, due to the fact that the Letters did not clearly convey this information.

97. The Third Letter was mailed in an envelope ("Envelope") with two clear windows: one window showing an address with a bar code, and one revealing Plaintiff's address and another bar code, in addition to other information, including the words "Amount Due", "Patient Name", "Record ID" and "Guarantor".

98. 15 U.S.C. § 1692f(8) of the FDCPA proscribes:

**(8) Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.**

99. The Envelope violated 15 U.S.C. § 1692f(8) by revealing language other than the debt collector's address. *Preston v. Midland Credit Mgmt.,* 948 F.3d 772, 784 (7th Cir. 2020)

100. Plaintiff was irritated and angry that the Envelope revealed, to whoever saw the same, that he owed money on a medical debt.

101. Upon information and belief, multiple people viewed the envelope that contained the Third Letter before it was delivered to Plaintiff.

102. Defendant's collection communications are to be interpreted under the "unsophisticated consumer" standard. *Gammon v. GC Services, Ltd. Partnership*, 27 F.3d 1254, 1257 (7th Cir. 1994).

### COUNT I—FAIR DEBT COLLECTION PRACTICES ACT—CLASS COUNT— 15 U.S.C. § 1692g(a)(2).

103. Plaintiff re-alleges the above paragraphs as set forth fully in this count.

104. NCC has failed to effectively state the name of the current creditor in the First Letter, Second Letter and Third Letter, in violation of 15 U.S.C. § 1692g(a)(2).

105. Plaintiff brings this action individually and as a class on behalf of (1) all persons similarly situated in the State of Illinois (2) from whom Defendant attempted to collect a charged off medical debt (3) by mailing a letter substantially similar to Exhibits A, B, and C (4) which lists a "client" and/or "client name" (5) but does not state a "current creditor" or "creditor" (6) and that directs payment to "Nationwide Credit & Collection, Inc. c/o Evergreen Bank Group" (7) during the period of time that begins one year prior to the filing of this Complaint, and ends on the date of the filing of this Complaint.

106. Exhibits A, B and C are each a form letter.

107. As Exhibits A, B, and C are each a form letter, the Class likely consists of more than 40 persons from whom Defendant attempted to collect an alleged debt using a letter substantially similar to said Exhibits.

108. Plaintiff's claims are typical of the claims of the Class. Common questions of law or fact raised by this class action complaint affect all members of the Class and predominate over any individual issues. Common relief is therefore sought on behalf of all members of the Class.

13

109. This class action is superior to other available methods for the fair and efficient adjudication of this controversy.

110. The prosecution of separate actions by individual members of the Class would create a risk inconsistent or varying adjudications with respect to individual members of the Class, and would, as a practical matter, either be dispositive of the interests of other members of the Class not party to the adjudication, or substantially impair or impede their ability to protect their interests.

111. Plaintiff will fairly and adequately protect and represent the interests of the Class. The management of the class action proposed is not extraordinarily difficult, and the factual and legal issues raised by this class action complaint will not require extended contact with the members of the Class, because Defendant's conduct was perpetrated on all members of the Class and will be established by common proof.

112. Plaintiff has retained counsel experienced in class action litigation including class actions brought under the FDCPA.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and the Class and against NCC as follows:

    A. Statutory damages in favor of plaintiff and all class members pursuant to 15 U.S.C. § 1692k(a)(2)(B);

    B. Costs and reasonable attorney fees pursuant to 15 U.S.C. § 1692k(a)(3);

    C. Such other or further relief as the Court deems proper.

**COUNT II—FAIR DEBT COLLECTION PRACTICES ACT—CLASS COUNT—15 U.S.C. § 1692f(8)**

113. Plaintiff re-alleges above paragraphs as set forth fully in this count.

114. NCC violated 15 U.S.C. § 1692f(8) by revealing language other than the debt collector's address via an envelope. *Preston v. Midland Credit Mgmt.,* 948 F.3d 772, 784 (7th Cir. 2020),

115. Plaintiff brings this action individually and as a class on behalf of (1) all persons similarly situated in the State of Illinois (2) from whom Defendant attempted to collect a charged off medical debt (3) by mailing a folded letter substantially similar to that found in Exhibit C (4) in an envelope as found in Exhibit D (5) which when viewed the envelope reveals the words "Amount Due", "Patient Name", Guarantor" and/or "Record ID" (6) during the period of time that begins one year prior to the filing of this Complaint, and ends on the date of the filing of this Complaint.

116. Exhibit C is a form letter.

117. Exhibit D is a form envelope.

118. As Exhibit C is a form letter, and Exhibit D is a form envelope, the Class likely consists of more than 40 persons from whom Defendant attempted to collect a debt using a letter and envelope substantially similar to those contained in said Exhibits.

119. Plaintiff's claims are typical of the claims of the Class. Common questions of law or fact raised by this class action complaint affect all members of the Class and predominate over any individual issues. Common relief is therefore sought on behalf of all members of the Class.

120. This class action is superior to other available methods for the fair and efficient adjudication of this controversy.

121. The prosecution of separate actions by individual members of the Class would create a risk inconsistent or varying adjudications with respect to individual members of the Class, and would, as a practical matter, either be dispositive of the interests of other members of

the Class not party to the adjudication, or substantially impair or impede their ability to protect their interests.

122. Plaintiff will fairly and adequately protect and represent the interests of the Class. The management of the class action proposed is not extraordinarily difficult, and the factual and legal issues raised by this class action complaint will not require extended contact with the members of the Class, because Defendant's conduct was perpetrated on all members of the Class and will be established by common proof.

123. Plaintiff has retained counsel experienced in class action litigation including class actions brought under the FDCPA.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and the Class and against NCC as follows:

  A.  Statutory damages in favor of plaintiff and all class members pursuant to 15 U.S.C. § 1692k(a)(2)(B);

  B. Costs and reasonable attorney fees pursuant to 15 U.S.C. § 1692k(a)(3);

  C. Such other or further relief as the Court deems proper.

### COUNT III—FAIR DEBT COLLECTION PRACTICES ACT—INDIVIDUAL COUNT—15 U.S.C. § 1692g

124. Plaintiff re-alleges above paragraphs as set forth fully in this count.

125. Defendant violated § 1692c(c) by continuing to communicate with Plaintiff in connection with the collection of the alleged debt sought in the First Letter after receiving a written request from Plaintiff to cease communication regarding the same.

126. Defendant violated § 1692g(b) by failing to cease collection efforts after receiving a written dispute in response to having received the First Letter, without having mailed Plaintiff

information verifying the debt sought therein. *Jenkins v. Union Corp.,* 999 F. Supp. 1120, 1130 (N.D. Ill. 1998).

127. Defendant violated § 1692g(a) by not mailing Plaintiff a validation notice until, upon information and belief, July 15, 2020 or thereafter, which was more than five days after the initial communication with Plaintiff regarding the alleged debt sought in the Second Letter.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and against NCC as follows:

A. Statutory and actual damages pursuant to 15 U.S.C. § 1692k(a)(1) and 15 U.S.C. § 1692k(a)(2);

B. Costs and reasonable attorney fees pursuant to 15 U.S.C. § 1692k(a)(3);

C. Such other or further relief as the Court deems proper.

## JURY DEMAND

Plaintiff demands trial by jury.

By: s/*Mario Kris Kasalo*
One of Plaintiff's Attorneys

Mario Kris Kasalo
**The Law Office of M. Kris Kasalo, Ltd.**
20 North Clark Street, Suite 3100
Chicago, IL 60602
Tel 312-726-6160
Fax 312-698-5054
mario.kasalo@kasalolaw.com

## DOCUMENT PRESERVATION DEMAND

Plaintiff hereby demands that each defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to plaintiff, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If defendant is aware of any third party that has possession, custody, or control of any such materials, plaintiff demands that defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the defendant.

By: /s/ *Mario Kris Kasalo*
Mario Kris Kasalo

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

By: /s/ *Mario Kris Kasalo*
Mario Kris Kasalo